## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| State Auto Property & Casualty Insurance Co., | |
| Plaintiff, | Case No. 3:21-cv-50171 |
| v. | Honorable Iain D. Johnston |
| KIN, Inc., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff State Auto Property & Casualty Insurance Co. ("State Auto") filed this action seeking a declaration that it does not owe KIN, Inc. ("Kohl's") a duty to defend it in the underlying litigation. In that underlying action, Karla Mascari alleges that she slipped and fell on snow or ice in a Kohl's store parking lot on February 10, 2019. That suit is also pending before this Court. *Mascari v. Divisions, Inc.*, No. 3:21-cv-50091. Kohl's contracted with Divisions, Inc. to operate and manage the Kohl's store premises in Machesney Park, Illinois. Divisions then contracted with LCU Properties, Inc. to remove snow and ice from the store's parking lot. LCU Properties then purchased the insurance policy at issue here from State Auto. Dkt. 30-2, ¶¶ 6,8.

State Auto now moves for summary judgment, arguing that it does not owe Kohl's a duty to defend it in the underlying suit because Kohl's is not an additional insured party in the insurance policy. For the reasons explained below, the motion [30] is granted. State Auto does not owe Kohl's a duty to defend.

1

## A. Analysis

On a motion for summary judgment, the Court views the evidence and all reasonable inferences in the light most favorable to the nonmovant. *Cont'l Western Ins. Co. v. Country Mut. Ins. Co.*, 3 F.4th 308, 314 (7th Cir. 2021). Summary judgment, then, is warranted if the evidence establishes that no genuine dispute of material fact remains, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Because neither party raised a choice of law question, the Court merely applies "the forum state's substantive law." *Selective Ins. Co. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016).

Under Illinois law, the Court applies the eight corners rule when determining whether a duty to defend exists under the relevant insurance policy. *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579 (7th Cir. 2021). Under that rule, the Court compares only the contents within the four corners of the insurance policy with the four corners of the complaint in the underlying litigation. *Id.* On review of those documents, the Court then determines whether the underlying complaint's allegations fall within, or potentially within, the coverage provided by the relevant insurance policy. *Id.* at 580 (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992). The Court applies traditional contract principles, and if "the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning*." *Outboard Marine*, 607 N.E.2d at 1212 (emphasis in original). If the language of the policy is

2

"susceptible to more than one reasonable interpretation," however, the Court construes the policy in favor of the insured and against the insurer. *Id.*

State Auto's motion for summary judgment rests on a single contention: that Kohl's is not an additional insured party under the insurance contract at issue. Dkt. 30, at 3 ("Kohl's does not qualify as an additional insured as there is no written contract between Kohl's and LCU requiring LCU to add Kohl's as an additional insured."), at 7 ("[T]he plain language of the policy provisions requires that there must be a written agreement between LCU and Kohl's for Kohl's to qualify as an additional insured.").

  1. *Insurance contract between LCU Properties and State Auto*

First, LCU Properties, the company responsible for snow and ice removal at the store, purchased insurance coverage from State Auto. Dkt. 1-1. Those two entities are the only named parties to the insurance contract. Section D of the insurance contract provides for automatic additional insured status:

> **The following is added to Section II – Who Is An Insured:**
> **2.** Any person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or written agreement, that *such* person or organization be added as an additional insured on your policy.

Dkt. 1-1, at 177 (emphasis added). Thus, the insurance contract provides for additional insured status for organizations with whom LCU Properties has a written agreement declaring that organization to be an additional insured on the insurance policy and for whom the work is being accomplished.

    *2. Contracts between LCU Properties and Divisions*

    LCU Properties then entered into a Snow Removal Service Agreement with

Divisions to remove snow and ice at the Kohl's store in Machesney Park, Illinois.

Dkt. 1-2. That contract was governed by the parties' Master Provider Agreement.

Dkt. 1-3. The Master Provider Agreement included a blanket agreement section at

issue here:

> 2. **Blanket Agreement**. Provider [LCU Properties] shall be bound to
> Divisions by the terms of this Agreement for any Work performed by
> Provider on a Project for or on behalf of Divisions, and this Agreement
> along with the other Contract Documents shall control and govern the
> relationship between Provider and Divisions with respect to such Work
> on any Project. Provider shall assume toward Divisions all the
> obligations and responsibilities which Divisions assumes with respect to
> the applicable Project. **In addition to all of its rights under this
> Agreement and except as otherwise provided herein, Provider
> agrees that Divisions shall have the same rights and remedies
> as against Provider as Divisions' client and/or the Owner under the
> other Contract Documents may have against Divisions with the
> same force and effect as though every such duty, obligation,
> responsibility, right or remedy were set forth herein in full.**
> Further, notwithstanding any other provision herein, this Agreement
> shall also control and govern the relationship between Provider and
> Divisions for any Work performed pursuant to any Service Agreements
> and/or the other Contract Documents entered into prior to the Effective
> Date (in lieu of any earlier version of this Agreement), and such Service
> Agreements and/or other Contract Documents shall continue in full
> force and effect unless terminated in accordance with the terms thereof
> or this Agreement.

Dkt. 1-3, at 2 (emphasis added). Furthermore, the additional insured section of the

Master Provider Agreement between LCU Properties and Divisions provides that

additional insured parties shall include "Divisions' client for the applicable Project."

*Id.* at 5 (subsection b).

The Master Provider Agreement then anticipates the creation of work-specific service agreements. If LCU Properties and Divisions were to enter into any such service agreements, those agreements would be governed by (1) the Master Provider Agreement, including its exhibits and any subsequent amendments; (2) the job-specific service agreement; and (3) the agreement "between Divisions and the owner or manager of the subject property . . . where the Work/Project is being performed." *Id.* at 2 (under the "Contract Documents Defined" section). LCU Properties and Divisions then entered into a "Snow Removal and Service Agreement" that expressly fell under the umbrella of the Master Provider Agreement. Dkt. 1-2, at 2. Although only LCU Properties and Divisions are parties to that contract, it expressly includes the relevant Kohl's store as the service address. *Id.*

### 3. Kohl's is not an additional insured

In support of its motion for summary judgment, State Auto contends that "Kohl's does not qualify as an additional insured as there is no written contract between Kohl's and LCU requiring LCU to add Kohl's as an additional insured." Dkt. 30-1, at 3. A brief discussion of the case law explains why that argument must prevail. Not surprisingly, the case law emphasizes the critical importance of the insurance policy's language regarding what persons or organizations are additional insureds.

In *Westfield Insurance Co. v. FCL Builders, Inc.*, the Illinois Appellate Court addressed remarkably similar facts. 948 N.E.2d 115 (Ill. App. Ct. 2011). In that case, FCL—a general contractor—subcontracted part of its project to Suburban

Ironworks, who then subcontracted the steel erection portion of the work to JAK Iron Works. JAK then purchased an insurance policy from Westfield. Similar to the facts in this case, the court was asked whether FCL was an additional insured party on the insurance policy JAK purchased from Westfield. The Court held that the additional insured section of the insurance policy unambiguously required direct privity of contract with JAK for a party to be additionally insured:

> *Section II — Who Is an Insured* is amended to include as an additional insured any person or organization for whom you are performing operations *when you and such person or organization have agreed in writing* in a contract or agreement that such person or organization be added as an additional insured on your policy.

*Id.* at 116–17. The record contained no evidence showing that JAK had agreed in writing directly with FCL to make FCL an additionally insured party. "The policy explicitly and unambiguously requires a direct, written agreement to that effect in order to cover anyone other than JAK under the policy." *Id.* at 118.

Because the plain language of the insurance policy required direct privity of contract between the putative additional insured and the named insured, and because no such privity existed, FCL was not an additional insured. Furthermore, and similar to the arguments pressed here, FCL asserted that it must be an additionally insured party because Suburban Ironworks had a contract directly with JAK that obligated JAK to make FCL an additional insured. *Id.* at 119. The court rejected that argument and held that the contract between Suburban Ironworks and JAK was irrelevant to the question of whether Westfield was obligated to cover FCL because the insurance policy required a direct contract. *Id.*

6

In contrast, the Seventh Circuit addressed similar language in *Selective Insurance Co. v. Target Corp.*, 845 F.3d 263 (7th Cir. 2016). In that case, Target contracted with Harbor Industries to supply fitting rooms at one of its stores. Harbor then purchased insurance coverage from Selective. After a customer was injured by a faulty door, Selective filed suit seeking a declaration that Target was not an additional insured under the policy, so it did not owe a duty to defend it in the underlying litigation. *Id.* at 265. The court held that the overarching supplier agreement directly between Harbor and Target remained in effect at the relevant time, and that the supplier agreement required Harbor to provide insurance coverage to Target. *Id.* at 267–88. Thus, Target had a direct, written agreement with Harbor, so Target was an additional insured. *Id.* at 268.

Lastly, in *Pekin Insurance Co. v. Centex Homes*, the Illinois Appellate Court again addressed a similar question. 72 N.E.3d 831 (Ill. App. Ct. 2017). That case presented more complicated facts than those in *Selective*. Centex Real Estate and Centex Homes owned the premises in question. Centex Homes (not Centex Real Estate) entered a contract with McGreal Construction, which then purchased insurance coverage from Pekin. During the subsequent work, a McGreal employee was injured on the job, resulting in the underlying litigation. *Id.* at 834. There again, the additional insured section of the insurance policy contained similar language: An additional insured is "any person or organization for whom you are performing operations, when you and *such* person or organization have agreed in a written contract effective during the policy period . . . that you must add that person

or organization as an additional insured on a policy of liability insurance." *Id.* at 835 (emphasis added).

Though the court described both Centex Homes and Centex Real Estate as owners of the premises in question, the contract with McGreal described only Centex Homes as the Owner. *Id.* at 834. Having defined the "Owner," the contract between McGreal and Centex Homes then required McGreal's insurance policy with Pekin to include:

> At no expense to Owner, Additional Insured Endorsement approved by Owner naming as additional insureds with respect to both ongoing and completed operations, Centex Homes and Centex Real Estate.

*Id.* at 834. Though Centex Homes was listed as the "Owner," and although the signature block on the contract listed Centex Homes as the owner, the contract was signed by "Centex Real Estate Corporation, a Nevada Corporation, Its Managing Partner." *Id.* at 835. The court held that Centex Real Estate signed the contract only as the manager partner of Centex Homes. *Id.* at 837. Thus, Centex Real Estate itself was not a signatory to the contract. Because Centex Real Estate was not in direct privity with McGreal, it was not an additional insured party under the insurance contract, even though the contract between McGreal and Centex Homes contemplated Centex Real Estate as an additional insured. *Id.*

In this case, Divisions contracted directly with LCU Properties to perform snow and ice removal. LCU Properties then purchased insurance coverage from State Auto. Like the cases mentioned above, the insurance contract defined who would be an additional insured:

> Any person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or written agreement, that *such* person or organization be added as an additional insured on your policy.

Dkt. 1-1, at 177 (emphasis added). Thus, the contractual language presents two requirements to become and additional insured. First, the person or organization must by one "for whom you are performing operations." *Id.* Second, by using the text "when you and *such* person or organization," the contract expressly required direct privity of contract. *Id.* (emphasis added). Indeed, that was one of the holdings in *FCL Builders*, in which the Illinois Appellate Court analyzed almost identical language. 948 N.E.2d at 117. The second requirement is dispositive here. Kohl's undisputedly was not in direct privity of contract with LCU Properties.

In response to the motion for summary judgment, Kohl's argues that "the facts and evidence clearly demonstrate that LCU Properties and Kohl's both expressly agreed in writing that Kohl's was to be added as an additional insured under LCU's policy." Dkt. 35, at 4. This argument is unavailing for multiple reasons. First, a reasonable reader might infer that the argument asserts a contractual relationship between Kohl's and LCU Properties. No such agreement exists in the record. Second, the argument continues by citing to the Master Provider Agreement between LCU Properties and Divisions. *Id.* To be sure, that contract provided that the additional insured "shall include . . . Divisions' client for the applicable Project," and the "Owner for the applicable Project." Dkt. 1-3, at 5.

But the fact the contract between LCU Properties and Divisions addressed insurance coverage for Kohl's does nothing to alter the requirement in the insurance

9

contract that Kohl's can only be an additional insured if it is in direct privity of contract with LCU. *See FCL Builders*, 948 N.E.2d at 119. Indeed, the insurance policy in *Pekin* contained the same direct contract requirement. That court held that only the direct signatory was covered by the insurance policy even though the language of the services contract contemplated both Centex Homes and Centex Real Estate as additional insured. *Pekin*, 72 N.E.3d at 835. Because the insurance policy requires direct privity of contract, the language in the services contract between LCU Properties and Divisions that requires LCU Properties to add Kohl's as an additional insured is irrelevant to the question of whether Kohl's is actually an additional insured. *See FCL Builders*, 948 N.E.2d at 119.

Kohl's also points to the incorporation provision of the Master Provider Agreement, which purports to incorporate the contract between Divisions and Kohl's. Dkt. 35, at 7. But that provision does not change the requirement that Kohl's must have a direct, written contract with LCU Properties to be an additional insured. Again, the contract at issue in *Pekin* expressly required Centex Real Estate to be added as an additional insured, but that court held that the language couldn't change the fact that Centex Real Estate lacked privity. *Pekin*, 72 N.E.3d at 837–38. And in *FCL Builders*, the Illinois Appellate Court explained that because of the direct privity requirement, "The terms of the FCL-Suburban contract and the Suburban-JAK contract are consequently irrelevant to whether Westfield is obligated to cover FCL as an additional insured under this particular policy provision." 948 N.E.2d at 119. That was true in *FCL Builders* even though the

10

Suburban-JAK contract (analogous to the LCU Properties-Divisions contract here) incorporated the Suburban-FCL contract (analogous to the Division-Kohl's contract here). *Id.*

State Auto contractually agreed to provide coverage to LCU Properties. Those two entities agreed on a process under which third parties can become additional insured parties. That process was bargained for. LCU Properties cannot change the agreement to a different process in a contract to which State Auto is not a party. Such an allowance would result in State Auto being held to terms that it never bargained for.

**B. Conclusion**

For the reasons explained above, the Court grants State Auto's motion for summary judgment [30]. State Auto does not owe Kohl's a duty to defend it in the underlying litigation. Civil case terminated.


Date:  March 2, 2022

_____
      Honorable Iain D. Johnston
      United States District Judge

11